Filed 2/26/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RODRIGO AREVALO,<br><br>        Defendant and Appellant. | A150804<br><br>(Napa County<br>Super. Ct. No. CR174988) |

        This case arises out of a statutory anomaly that requires a trial court to use one formula to calculate presentence conduct credits when placing a defendant convicted of a violent felony on probation, but requires the court to use another formula to recalculate those credits if that person later violates probation and is sentenced to state prison. Defendant Rodrigo Arevalo was placed on probation after pleading no contest to a felony count of continuous sexual abuse of a child under 14 years old.  Before being placed on probation, he waived some of the custody credits he had accrued while in jail in accordance with *People v. Johnson* (1978) 82 Cal.App.3d 183 (*Johnson*).  This waiver left him with a total of 365 days of credits:  183 credits for time served (actual credits) and 182 credits for good behavior (conduct credits) under Penal Code section 4019.[1]  At the time of the waiver, the trial court mistakenly indicated that Arevalo would be entitled to the full 365 days of custody credits if he were eventually sentenced to prison.

        The following year, Arevalo admitted to violating his probation, and the trial court sentenced him to six years in prison.  In doing so, the court recalculated the pre-probation conduct credits under section 2933.1, subdivision (c) (section 2933.1(c)), which limits the

---

        [1] All further statutory references are to the Penal Code.

1

conduct credits a defendant convicted of a violent felony can accrue under section 4019 to 15 percent of actual time served.  This calculation resulted in an award of 27 days of conduct credits for the same period of pre-probation custody that had resulted in an award of 182 days of conduct credits when probation was granted.

On appeal, Arevalo claims that the original award of 182 days of conduct credits should be applied to his prison sentence.  He contends that his *Johnson* waiver was not knowing and intelligent and that he is entitled to enforce the trial court's comment when probation was granted that he would have 365 days of credits for pre-probation time served were he sentenced to prison.  We reject these contentions and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In April 2015, the Napa County District Attorney filed a complaint charging then 18-year-old Arevalo with seven felony counts of various sexual offenses against a minor that occurred over the previous two years.  We do not discuss the facts underlying these offenses because they are immaterial to the issues on appeal.  Arevalo eventually pleaded no contest to a charge of continuous sexual abuse of a child under 14, a violent felony, and the remaining charges were dismissed.[2]  On his plea form, Arevalo acknowledged that the maximum sentence he faced was 16 years in prison.

In June 2016, the trial court suspended imposition of the sentence and placed Arevalo on probation for 12 years subject to various terms and conditions, including that he serve 365 days in jail.  The court explained that before it could grant probation Arevalo was required "to waive the excess" custody credits over 365 days to comply with *Johnson*.  In accepting the waiver, the court then stated, "Mr. Arevalo, as I indicated as part of my sentencing here, in order for me to grant you probation you would have to waive what would be 968 days of custody credits.  So in other words, that if you were to come back to court on a probation violation your credits towards any prison sentence you

_____

[2] The conviction was under section 288.5, subdivision (a), and the offense constitutes a violent felony under section 667.5, subdivision (c)(16).

2

might receive would be limited to 365 days. That's actual time plus conduct credits. Do you understand that?" Arevalo responded, "Yeah." He was awarded 365 days of custody credits, composed of 183 days of actual credits and 182 days of conduct credits, resulting in the jail term being deemed served.

A few months later, Arevalo was arrested, and the Napa County District Attorney filed two petitions to revoke his probation. Arevalo ultimately admitted he had violated his probation terms by consuming alcohol, driving under the influence, and driving without a license.

At the January 2017 sentencing hearing, the trial court revoked and terminated probation and sentenced Arevalo to the lower term of six years in prison. It then awarded him 379 days of presentence credits, composed of 330 days of actual credits and 49 days of conduct credits. The court explained that, although Arevalo had 365 days of custody credits at the time he was put on probation, he could accrue conduct credits at only 15 percent of actual time for purposes of his sentence to prison. As a result, he received 330 days of actual credits (composed of the 183 days of actual credits he was originally awarded and 147 days of actual credits for the time he served between his August 2016 arrest and his sentencing to prison) and 49 days of conduct credits, representing 15 percent of the 330 days. In other words, the recalculation changed his total conduct credits for pre-probation time served from 182 days to 27 days (15 percent of 183 days).

Arevalo objected, arguing that he was entitled to the full 365 days of custody credits that were calculated when probation was granted. Observing that it was "an anomaly about [section] 2933.1 that you get the day for day [conduct credits] when you're granted probation, but you lose it once you're sentenced to prison," the trial court awarded 379 days of credits without prejudice to readdressing the issue if the parties wished to brief it.

Arevalo then filed a motion for reconsideration of the award of custody credits, which the trial court denied. The court determined that Arevalo had made "a free and voluntary [*Johnson*] waiver," explaining, "I wasn't making any promises to him about what would happen if he went to prison, other than I was giving him credit for 365,

3

which at that time was day for day, because he was being granted probation. [¶] . . . [T]o hold otherwise would not be following the explicit terms of [section 2933.1]."

II.

DISCUSSION

A. *Section 4019 Governs the Calculation of Conduct Credits when a Defendant Convicted of a Violent Felony Is Placed on Probation, but Section 2933.1(c) Governs if the Defendant Is Later Sentenced to Prison.*

This case is yet another illustration of how "perplexing the computation of custody credits may be for the trial court." (*People v. Daniels* (2003) 106 Cal.App.4th 736, 739 (*Daniels*).) A defendant may "accrue both actual presentence custody credits under . . . section 2900.5 and conduct credits under . . . section 4019 for the period of incarceration prior to sentencing." (*People v. Kennedy* (2012) 209 Cal.App.4th 385, 395.) The calculation of actual credits is performed by simply adding together "all days of custody" the defendant has served. (§ 2900.5, subd. (a).) In contrast, the calculation of conduct credits depends on the purpose for which they are being calculated. Under section 4019, a defendant can earn two conduct credits for every two actual credits.[3] (§ 4019, subds. (b), (c), (f); *People v. Whitaker* (2015) 238 Cal.App.4th 1354, 1358.) But under section 2933.1(c), a defendant convicted of a violent felony "cannot earn good behavior credits under section 4019 exceeding 15 percent of the actual time of confinement in a local facility 'prior to placement in the custody of the Director [of Corrections and Rehabilitation].' " (*People v. Buckhalter* (2001) 26 Cal.4th 20, 31-32, quoting § 2933.1(c).) We independently review whether a trial court has correctly applied these statutes in awarding custody credits. (See *People v. Anaya* (2007) 158 Cal.App.4th 608, 611.)

Although section 2933.1(c)'s 15-percent cap on conduct credits applies when a defendant convicted of a violent felony violates his or her probation and is sentenced to

---

[3] This calculation is often referred to as "day for day" credits. But because the statutory formula actually awards conduct credits based on every two days served, when the actual time served is an odd number the resulting conduct credits are the next lower even number. Thus, Arevalo's award of 183 days of actual credits resulted in 182 days of conduct credits.

prison, it does not apply when that person is first granted probation. (*In re Carr* (1998) 65 Cal.App.4th 1525, 1529.) The calculation of conduct credits for purposes of granting probation is controlled by section 4019. The proper calculation of conduct credits in these two different circumstances was addressed and resolved in *Daniels*. There, the defendant was convicted of a violent felony and placed on probation, with the condition that he serve 365 days in jail. (*Daniels, supra*, 106 Cal.App.4th at p. 738.) At the time he received probation, the trial court awarded him actual credits for jail time served before receiving probation and conduct credits under section 4019, and the sheriff computed additional conduct credits under that statute, as well as actual credits, for further time spent in jail until the 365-day term was deemed served. (*Daniels*, at pp. 738-739.) When the trial court later revoked probation and imposed a prison sentence, it awarded the defendant credits for all the time he actually spent in jail but limited his conduct credits to 15 percent under section 2933.1(c). (*Daniels*, at p. 739.)

In affirming the trial court's award of custody credits, *Daniels* rejected the defendant's contention that his "section 4019 credits were irrevocably earned and could not be reduced by a recalculation under section 2933.1(c) at the time he was sentenced to state prison." (*Daniels, supra*, 106 Cal.App.4th at p. 739.) *Daniels* explained that when granting probation, the trial court had properly calculated the defendant's conduct credits under section 4019, but once the prison sentence was imposed, section 2933.1(c) applied and his conduct credits had to be limited to 15 percent of his actual time served. (*Daniels*, at p. 741.) *Daniels* determined that "[n]o other construction of the statutory scheme would be faithful to the language of section 2933.1(c), or produce a fair and reasonable result," emphasizing that "the benefit of previously earned conduct credits [was] not being taken away from" the defendant as he "received the full benefit of section 4019 credits against his jail term because he was released from jail sooner than he would have been if the section 2933.1(c) limitation had been applied." (*Id.* at pp. 741-742.)

The only distinctions between this case and *Daniels*, a decision neither party addresses, is that Arevalo entered a *Johnson* waiver and the trial court indicated that he

5

would retain all 365 days of custody credits if he were sentenced to prison. Had the court said nothing and merely awarded Arevalo 183 days of actual credits and 182 days of conduct credits under section 4019 when it placed him on probation, there is no question under *Daniels* that, upon sentencing him to prison, the court would have been required to limit his conduct credits under section 2933.1(c) to 15 percent of 183 days. Thus, the issue we must resolve is whether the circumstances surrounding Arevalo's *Johnson* waiver entitled him to 182 days of conduct credits against his prison sentence for pre-probation time served, despite section 2933.1(c)'s dictates. We conclude they did not.

        *B.*      *A* Johnson *Waiver Allows a Defendant to Serve More than a Year in Jail While on Probation.*

Section 2900.5 provides that upon any conviction, when a defendant has already served time in local custody, "all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019 . . ., shall be credited upon his or her term of imprisonment . . . . If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served." (§ 2900.5, subd. (a).) In turn, "term of imprisonment" is defined to include "any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any sentence." (§ 2900.5, subd. (c).) "[T]he court imposing the sentence" has "the duty . . . to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section" and list them on the abstract of judgment or probation order indicating a term of imprisonment. (§ 2900.5, subd. (d); see § 1213, subd. (a).)

"A *Johnson* waiver is a waiver of a statutory right to credit for time served against a subsequent county jail or state prison sentence pursuant to section 2900.5." (*People v. Arnold* (2004) 33 Cal.4th 294, 307 (*Arnold*).) A primary reason why a defendant would waive custody credits stems from section 19.2, which prohibits a trial court " 'as a condition of probation' " from committing a defendant to jail for more than one year "for

6

any single offense or probation violation." (*Arnold*, at pp. 299-300 & fn. 1, quoting § 19.2.) Together, these statutes created a "dilemma for sentencing courts" arising from "the interplay of section 19.2's long-standing one-year cap on the time that can be served in county jail as a condition of probation for any single [offense or probation violation], and the [1976] amendment of section 2900.5, requiring that all local jail time served be credited against any subsequent county jail term imposed as a condition of reinstatement of probation." (*Arnold*, at pp. 300-301.) If a "defendant had already served a year or more in county jail as a condition of probation before subsequently violating probation," these "two statutes forced the sentencing court to choose between sentencing the defendant to state prison or imposing no additional jail time as a condition of reinstatement of probation—because applying custody credit for the earlier one year of county jail time against the new county jail term would result in the defendant's having already served the maximum one-year county jail term permitted under section 19.2 for the new violation." (*Id.* at p. 301, italics omitted.) *Johnson* provides a way around this dilemma. By allowing a defendant to waive custody credits for previous jail time, *Johnson* permits "a sentencing court to reinstate probation conditioned on service of an additional period of up to one year in county jail for the new probation violation" and thereby ensure that the defendant actually spends additional time in jail. (*Arnold*, at p. 302.)

The waiver authorized in *Johnson* was contemplated to occur not when a defendant is originally placed on probation, but instead when the defendant's probation is reinstated after a violation. (*Johnson, supra*, 82 Cal.App.3d at pp. 184-185.) As we have said, such a waiver allows a trial court to reinstate probation conditioned on service of an additional period of up to one year in jail for the violation. (*Id.* at p. 186.) But subsequent cases have relied on *Johnson*'s general principle that a defendant may waive entitlement to custody credits "in upholding [such] waivers in a wide variety of circumstances." (*People v. Johnson* (2002) 28 Cal.4th 1050, 1054 (*Johnson II*).) In *Johnson II*, the Supreme Court approved a waiver of credits that was obtained, as was Arevalo's, when the defendant was originally put on probation, holding that a defendant's

7

ability to "expressly waive entitlement to section 2900.5 credits against an ultimate jail or prison sentence for past and future days in custody" means that "a trial court has discretion to condition a grant or extension of probation upon a defendant's express waiver of past and future custody credits." (*Id.* at pp. 1052, 1054-1055.) Thus, we refer to Arevalo's waiver as a *Johnson* waiver in the broader sense of a waiver of presentence custody credits, not in the sense of a waiver necessitated by sections 19.2 and 2900.5 to enable additional confinement in jail as a condition of probation.[4]

      C.     *Arevalo Is Not Entitled to Relief Even if His* Johnson *Waiver Was Not Fully Knowing and Intelligent.*

" 'As with the waiver of any significant right by a criminal defendant, a defendant's waiver of entitlement to section 2900.5 custody credits must, of course, be knowing and intelligent.' " (*Arnold, supra*, 33 Cal.4th at p. 308.) " 'To determine whether a waiver is knowing and intelligent, the inquiry should begin and end with deciding whether the defendant understood he [or she] was giving up custody credits to which he [or she] was otherwise entitled.' " (*People v. Jeffrey* (2004) 33 Cal.4th 312, 320.) Whether a *Johnson* waiver is knowing and intelligent is determined under the totality of the circumstances and is a question of law we review de novo. (*Arnold*, at p. 306; see *People v. Panizzon* (1996) 13 Cal.4th 68, 80.)

Arevalo contends that his *Johnson* waiver was not knowing and intelligent because the trial court "promise[d] that he would receive 365 days of credits were his probation ultimately revoked" but "failed to give him a clear warning that under section [2933.1] he would be deprived of a large portion of those credits if he were

---

[4] While it was well within the trial court's discretion to condition probation on the waiver of 968 days of custody credits, Arevalo eventually would have been required to waive more of his pre-probation credits (so as to reduce his total to fewer than 365 days) in order for the trial court to have conditioned a future reinstatement of Arevalo's probation on the actual service of additional jail time. Still, and contrary to the court's suggestion otherwise, Arevalo was not *required* to waive 968 days of credits when he was originally placed on probation. While probation cannot be conditioned on a commitment longer than one year under section 19.2, we see no reason why a defendant would have to waive all credits that exceed the length of the term actually imposed.

8

imprisoned." We begin by observing that it is misleading to speak of being "deprived" of conduct credits in this context. Section 2900.5 establishes that conduct credits are not banked, in the sense of carrying over from sentencing hearing to sentencing hearing. Rather, the statute provides that each time a trial court orders a "term of imprisonment," including jail time as a condition of probation, it has a duty to determine the dates a defendant has actually spent in custody and, based on that number, calculate "the total number of days to be credited," including conduct credits. (§ 2900.5, subds. (c) & (d).) True enough, the days actually spent in custody over a given period will remain the same from hearing to hearing, and thus, absent a waiver, the corresponding number of actual credits will remain the same as well. But, as *Daniels* confirms, there is nothing fixed about how many conduct credits those actual credits will generate, because that number will depend on the purpose for which the calculation is made.

We accept that a knowing and intelligent waiver requires an understanding not only of the number of credits being given up, but also of the number of credits remaining after the waiver. (See *People v. Ambrose* (1992) 7 Cal.App.4th 1917, 1922 [knowing and intelligent waiver "is one entered into with awareness of its consequences," including "an understanding of the impact of that waiver on the amount of time a defendant may be incarcerated"].) But both conditions were satisfied here: Arevalo does not dispute that he understood he was giving up 968 days of credits, and he also understood that, *at the time he entered the waiver*, he was retaining 183 days of actual credits and 182 days of conduct credits—which were then applied to the jail term imposed. The only thing he claims he did not understand was that he would not be entitled to 182 days of conduct credits under the new calculation performed if he were sentenced to prison.

Had the trial court remained silent about the number of credits to which Arevalo would be entitled upon a subsequent sentence to prison, he would have no argument that his *Johnson* waiver was invalid. *Arnold* is instructive. There, the Supreme Court rejected the contention that a *Johnson* waiver was not knowing and intelligent because the trial court failed to inform the defendant that the waiver applied not only to the credits' use against future jail terms but also to their use against any prison sentence.

(*Arnold, supra*, 33 Cal.4th at pp. 298-299.) The Court explained, " 'Nothing in the statutory scheme suggests that custody credits are kept in dual accounts, one for use against jail time and one for use against prison time. To the contrary, section 2900.5 treats all credits uniformly, wherever accrued and wherever applied. Therefore, a waiver of custody credits is presumptively applicable to any future term of imprisonment,' " and a defendant who violates probation and is sentenced to prison " 'should not be permitted to attack his [or her] waiver by faulting the court for failing to foresee his [or her] recidivism and warn him [or her] of its consequences.' " (*Arnold*, at p. 307.) Thus, while "[t]he better practice is for sentencing courts to expressly admonish defendants who waive custody credits under *Johnson* . . . that such waivers will apply to any future prison term should probation ultimately be revoked and a state prison sentence imposed[,] . . . [a] sentencing court's failure to include such an explicit advisement [alone] will not . . . invalidate a *Johnson* waiver." (*Id.* at p. 309.)

Similarly, as we have explained, the amount of custody credits is calculated anew each time a trial court imposes a term of confinement and, as *Daniels* illustrates, there is no inherent entitlement to credits that were awarded at previous sentencing hearings. Thus, a defendant who enters a *Johnson* waiver has no basis for presuming from the court's silence on the matter that he or she will retain all un-waived conduct credits for all time and for all purposes.

The trial court here, however, did not merely fail to explain the consequences of section 2933.1(c) but affirmatively suggested that Arevalo would retain all 365 days of custody credits if he were sentenced to prison. The Attorney General argues that by telling Arevalo his "credits toward any prison sentence [he] might receive would be *limited* to 365 days" (italics added), the court did not actually mean that Arevalo would receive 365 days "under any and all circumstances." We disagree. It is far more reasonable to interpret the court's use of the word "limited" to refer to the fact Arevalo was waiving all credits above 365 days, not to the possibility that he might get fewer than 365 days of credits later. Moreover, the court specifically referred to the credits' application to any prison sentence imposed if Arevalo violated probation, the same

10

scenario that came to pass, and there were no other variables affecting the fact that if he *were* sentenced to prison, section 2933.1(c) would apply and his conduct credits would be capped at 15 percent of actual time served. Thus, the court's suggestion that Arevalo would retain 365 days of credits toward any such sentence was mistaken because section 2933.1(c) made it a certainty that if he were eventually sentenced to prison he would be entitled to fewer conduct credits for his pre-probation time in custody.

Nevertheless, even assuming that the *Johnson* waiver was not knowing and intelligent by virtue of the trial court's mistaken statement, Arevalo offers no authority for the proposition that he is entitled to the full 365 days of custody credits despite section 2933.1(c)'s dictates. Generally, if a trial court misstates the law in advising a defendant of the consequences of a waiver, the defendant must demonstrate reliance on the misstatement to be entitled to relief. (See, e.g., *People v. D'Arcy* (2010) 48 Cal.4th 257, 286-287 [waiver of right to self-representation]; *People v. Fox* (2014) 224 Cal.App.4th 424, 437 [waiver of right to counsel].) Arevalo can claim no such reliance. He does not, and he could not reasonably, contend that he would have declined probation by not entering the *Johnson* waiver had he understood that his conduct credits might eventually be recalculated under section 2933.1(c).[5] Therefore, he has not shown that any failure to understand the waiver's consequences was prejudicial.

Arevalo insists that he is entitled to enforce the trial court's purported promise of 365 days of custody credits against any prison sentence. Initially, we reject his suggestion that "[t]he [trial] court could have credited him for 365 of the 465 days he actually spent in jail . . . [and] then add[ed] 54 days (15%) for good conduct." This ignores that he waived all but 183 days of actual credits, and he is not entitled to

---

[5] In response to an argument by the Attorney General, Arevalo disavows any claim that "he would have gone to trial instead of entering a plea" had he understood the full consequences of the *Johnson* waiver. The parties' focus on whether Arevalo would have entered the plea is misplaced, as the waiver was not part of the plea bargain, but his position is consistent with the conclusion that he does not seek to undo the grant of probation either.

11

additional conduct credits for pre-probation time served calculated on top of the 182 days of conduct credits he was original awarded.

Nor do we perceive any authority for enforcing the trial court's suggestion that Arevalo would be entitled to 182 days of conduct credits for his pre-probation custody if he were sentenced to prison. As we have explained, *Daniels* establishes that once he was sentenced to prison, he was entitled only to conduct credits calculated under section 2933.1(c), not section 4019. Enforcing the court's supposed promise would result in an unauthorized sentence, and it is therefore an improper remedy. (*People v. Gisbert* (2012) 205 Cal.App.4th 277, 282 [award of presentence custody credits that "trial court did not have discretion to award" results in unauthorized sentence]; see also *People v. Brown* (2007) 147 Cal.App.4th 1213, 1224 [specific performance of plea bargain unavailable as remedy where "negotiated sentence is invalid or unauthorized"].)

Trial courts should be aware of section 2933.1(c) when placing defendants convicted of violent felonies on probation and accepting waivers of presentence custody credits. Courts should strive to inform defendants that their conduct credits will be recalculated at a lower rate if they are sentenced to prison or, at least, avoid misleading them into believing that the same number of conduct credits will carry over from sentencing hearing to sentencing hearing. But even though Arevalo was not informed of section 2933.1(c)'s consequences, he fails to show that he is entitled to the relief he seeks.

III.
DISPOSITION

The judgment is affirmed.

12

_____
Humes, P.J.

We concur:


_____
Margulies, J.


_____
Banke, J.


*People v. Arevalo*  A150804

13

Trial Court:

Napa County Superior Court


Trial Judge:

Hon. Mark S. Boessenecker


Counsel for Defendant and Appellant:

Donald L. Lipmanson, Appointed by the First District Appellate Project

Counsel for Plaintiff and Respondent:

Xavier Becerra, Attorney General

Gerald A. Engler, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

René A. Chacón, Supervising Deputy Attorney General

Nanette Winaker, Deputy Attorney General

*People v. Arevalo* A150804

14