Filed 9/30/15  P. v. UC-Menjivar CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER VLADAMIR UC-MENJIVAR,<br><br>        Defendant and Appellant. | A143182<br><br>(Lake County<br>Super. Ct. No. CR932230) |

**I.**

**INTRODUCTION**

After appellant Christopher UC-Menjivar committed multiple probation violations, the trial court agreed to continue him on probation in exchange for appellant's waiver of custody credits for any future violations.  Thereafter, at three subsequent hearings the trial court found appellant to have violated the terms of his probation, and extended his probation without applying any custody credits, and without objection by appellant.  Now for the first time on appeal, appellant claims that his waiver was ambiguous and not knowingly and intelligently made, and he should have been awarded custody credits toward the three-year county jail sentence he received ultimately.  We disagree, and affirm the judgment.

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, at the age of 12, appellant was adjudged a ward of the juvenile court and placed on probation in a group home. The wardship petition alleged that appellant had committed assault with a deadly weapon, vandalism, and participated in a criminal street gang. In the following four years, appellant admitted to more than a dozen violations of probation. In 2013, when appellant was 16 years old, he was found unfit for further adjudication in juvenile court, and his case was transferred to superior court.

In December 2013, appellant appeared before the court and admitted three probation violations: possession of marijuana, possession of a knife, and dressing in gang colors. At sentencing, the court stated that the probation report recommended a waiver pursuant to *People v. Johnson* (2002) 28 Cal.4th 1050 (*Johnson* waiver) for any future violations, and asked if appellant was willing to agree to the waiver. Counsel responded: "Yeah. I spoke with [appellant] about that, and he understands that the *Johnson* waiver in effect would say although he is being given credit for time served as of now, should he have a violation of probation in the future, for either a violation of the terms and conditions of his probation or a new law violation, he would then have no credits to rely on at that point. You're back to square one, clean slate, zero. You understand that, [appellant]?" Appellant responded "Yes, sir." Counsel then inquired: "And you agree to that?" and appellant again responded "Yes, sir." The court revoked appellant's probation and stated: "The defendant has now waived credits for any future violations." The court ordered appellant to serve 196 days in juvenile hall, but applied the 196 credits he had accrued up to that time.

Appellant next appeared before the court in February 2014, and admitted three additional probation violations (possessing a knife, being suspended from school, and wearing gang clothing and tattoos). The court revoked his probation and reinstated him on probation essentially with the same terms and conditions as ordered in December 2013, except that his probation term was extended two years. Appellant also was ordered to serve 180 days in juvenile hall with "credit for zero days."

Appellant appeared again in July 2014 and admitted three more probation violations (violating curfew, associating with gang members, and violating Penal Code section 459 (burglary)).[1]  The parties agreed to a disposition of 30 days in juvenile hall. The probation officer stated that appellant had credits: 13 days actual and 12 days of conduct credit for 25 days.  The court sentenced him to 30 days in juvenile hall and stated: "With credits as follows[:] 13 actual, 12 behavior, total 25.  It's a half-time case. He's ordered to report to the probation department within 48 hours of your discharge from custody."  However, the minute order relating to that hearing stated: "The defendant will serve a period of thirty days in the Lake County Juvenile Hall, with credit for zero days previously served and credit for zero days of behavior credits for a total of zero days."

In September 2014, appellant admitted two probation violations (possessing a weapon and dressing as a gang member).  The court inquired if there was any agreement as to sentencing and defense counsel responded: "[A]ccording to the report, there was a *Johnson* waiver entered, it says for all past and future credits.  I don't know whether that would apply to his current period in custody, however."  The court responded "[t]ypically not."  Later during the hearing defense counsel stated: "He's got 286 days of credit that he *Johnson* waived away. . . .  [I]f the Court is going to enforce the *Johnson* waiver I believe he should get credit for his current period of incarceration on this latest violation."  The prosecutor reminded the court that appellant's credits were waived up to the time of sentencing.  The probation officer clarified that "the defendant entered a *Johnson* waiver waiving past, present, and future custody credits.  That would include up to the time of sentencing, all presentence credits."  The court imposed a term of three years in county jail and stated: "He waived all his credits.  He has zero credits."  The court advised appellant that credit for presentence incarceration is calculated by the probation department, but "[y]ou have none because you waived all those credits.  That's why I put you [on] probation again last time."

---

[1]  All further undesignated statutory references are to the Penal Code.

DISCUSSION

Appellant argues his *Johnson* waiver at the December 2013 sentencing only applied to the sentence imposed at that hearing, and did not waive other past or future credits.

Preliminarily, we note that respondent argues appellant has waived his right to raise this argument by failing to raise the issue in the trial court. Section 1237.1 states: "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing . . . ." (§ 1237.1.) An error in the calculation of the custody credits means a mathematical or clerical error. (*People v. Delgado* (2012) 210 Cal.App.4th 761, 767.) Section 1237.1 does not apply barring an appeal where principles of statutory construction and constitutional law are at issue. (*People v. Delgado*, at p. 767.)

Appellant contends that because the issue he raises on appeal does not involve an arithmetic or clerical error the forfeiture provision in section 1237.1 is inapplicable. (See generally *People v. Aguirre* (1997) 56 Cal.App.4th 1135, 1139.) We agree. The sole issue raised relates to whether appellant's waiver of all credits, no matter how calculated and applied, had been knowingly made. Therefore, we evaluate his claim on the merits.

"A *Johnson* waiver is a waiver of a statutory right to credit for time served against a subsequent county jail or state prison sentence pursuant to section 2900.5." (*People v. Arnold* (2004) 33 Cal.4th 294, 307 (*Arnold*).) " 'To determine whether a waiver is knowing and intelligent, the inquiry should begin and end with deciding whether the defendant understood he was giving up custody credits to which he was otherwise entitled.'. . ." (*People v. Jeffrey* (2004) 33 Cal.4th 312, 320 (*Jeffrey*), quoting *People v. Burks* (1998) 66 Cal.App.4th 232, 236, fn. 3.)

In *Arnold*, the Supreme Court held that when a defendant knowingly and intelligently enters into a *Johnson* waiver to avoid a prison sentence, thus waiving local jail time custody credits if he violates probation, then the waiver is for all purposes and

4

applies to any future use of such credits should probation ultimately be terminated and a previously suspended state prison sentence imposed. (*Arnold*, *supra*, 33 Cal.4th at pp. 308-309.) "*Arnold* holds that a knowing and intelligent *Johnson* waiver of local jail time custody credits is a waiver of such credits for all purposes, and that such waived credits may not be recaptured and applied against a subsequently imposed prison sentence in the event probation is revoked and a prison term imposed due to the defendant's own unlawful or unsatisfactory conduct while on probation. [Citations.]" (*Jeffrey*, *supra*, 33 Cal.4th at p. 317.) The waiver can also apply to future custody credits. "[A] defendant may expressly waive entitlement to section 2900.5 credits against an ultimate jail or prison sentence for past *and future days in custody*." (*Johnson*, *supra*, 28 Cal.4th at pp. 1054-1055, italics added.)

In *Jeffrey*, a companion case to *Arnold*, the court addressed whether the waiver of future custody credits is a waiver of such credits for all purposes, including application to a subsequently imposed prison term if probation is revoked. (*Jeffrey*, *supra*, 33 Cal.4th 312.) *Jeffrey* involved the waiver of future credits to be earned in a residential treatment program. The *Jeffrey* court held that the rule in *Arnold* applies equally to the waiver of future custody credits. (*Id.* at p. 318.) The court concluded there was no indication in the record that at the time defendant entered into the *Johnson* waiver, she believed she would be able to recapture her past or future custody credits to reduce a possible future prison term. (*Id.* at p. 319.)

Appellant argues that the *Johnson* waiver only applied to the credits for the sentence imposed at the waiver hearing itself. He asserts the waiver advisement was ambiguous because he may have only understood it to apply to the credits earned on the date of the waiver hearing. This suggestion is unreasonable in part because appellant actually received 196 days of accrued credit at the waiver hearing in December 2013. Since appellant served no time in custody as the result of the violations he admitted at that hearing, he could not have understood the *Johnson* waiver applied only to those credits earned up to December 2013.

5

Further, at the December 2013 hearing defense counsel and the court both clearly articulated that the waiver would apply to future violations. The court stated: "The defendant has now waived credits for *any future violations*." (Italics added.) Defense counsel advised the court that appellant "understands that the *Johnson* waiver in effect would say although he is being given credit for time served as of now, should he have a violation of probation in the future, for either a violation of the terms and conditions of his probation or a new law violation, he would then have no credits to rely on at that point. You're back to square one, clean slate, zero."

We disagree that this advisement was ambiguous. The court, appellant, and appellant's counsel all agreed that appellant's current credits applied and the *Johnson* waiver impacted any violations of probation in the future. Like *Jeffrey*, there is nothing said or implied that would have led appellant to believe he could recapture his past or future custody credits if his probation was revoked and a jail or prison term was later imposed. (See *Jeffrey*, *supra*, 33 Cal.4th at pp. 319-320 [the defendant does not point to "any factual basis for us to conclude that she understood her waiver to be anything other than a waiver of custody credits, both present and future, for all purposes, plain and simple"].)

Appellant argues that the trial court was "inconsistent" in its application of the *Johnson* waiver and this demonstrates it was ambiguous. There were a total of three hearings after the waiver hearing, held over a period of nine months. At the February 2014 hearing on three probation violations, the court ordered appellant to serve 180 days in juvenile hall with "credit for zero days." At the July 2014 hearing where appellant admitted three probation violations, the court adopted the parties' recommendation of 30 days in juvenile hall. When sentencing appellant, the court ordered him to serve 30 days in juvenile hall, but itemized 25 days of accrued credit. The minute order, however, stated that appellant was sentenced to 30 days with zero custody credits. At the third hearing in September 2014, where the court imposed three years in county jail, it stated that appellant had waived his credits and he had "zero credits."

Based on this record, we do not find the court's course of conduct supports the claim that the December 2013 waiver was ambiguous, or was not knowingly and intelligently made. If at the July 2014 hearing the court initially stated that appellant had accumulated 25 days of credit, it is unclear that those credits were being awarded. Even if so, the court's statement was the result of a momentary failure to recall that a *Johnson* waiver had been made the previous December. That error was corrected in the hearing minute order. Likewise, at the September 2014 hearing, once reminded that a *Johnson* waiver was in place, the court did not hesitate to enforce it; again without objection by appellant.

Therefore, we conclude that the credit waiver entered on December 2013 was not ambiguous, and that it was knowingly and intelligently made. The court clearly stated that the waiver applied to "any future violations," and neither appellant nor his counsel expressed any question as to its meaning. In fact, defense counsel echoed this same understanding in counsel's advisement to appellant, who stated he understood what was being explained. That appellant understood the scope of the waiver is supported by the absence of any objections after December 2013 when appellant was told at subsequent probation violation hearings that he was not being credited for any time served as a result of those violations.

Division One of this court has held that when appellant and his counsel did not object to the court's characterization of the *Johnson* waiver as for "all time and for all purposes," the record contained no affirmative evidence that appellant was not advised or failed to understand the scope of the waiver. (*People v. Salazar* (1994) 29 Cal.App.4th 1550, 1555.) "Appellant's silence in the face of each of these clear indications that the court considered the . . . waiver to be 'for all purposes' supports the inference that he understood the scope of the waiver." (*Id.* at p. 1555; *Burks*, *supra*, 66 Cal.App.4th at p. 236 [on an otherwise silent record, the waiver of credits is presumed to be a waiver for all purposes].)

Finally, we note that although it would have been preferable for the trial court to advise appellant directly, the failure to do so does not invalidate the waiver. (*Arnold*,

*supra*, 33 Cal.4th at p. 309 [trial court should expressly advise a defendant that he or she is giving up his or her entitlement to custody credits, but the failure to do so will not invalidate a *Johnson* waiver where "the defendant is otherwise found to have knowingly and intelligently relinquished his or her right to custody credits under section 2900.5"].)

## IV.
## DISPOSITION

The judgment is affirmed.

_____
RUVOLO, P. J.

We concur:


_____
REARDON, J.


_____
RIVERA, J.


A143182, *People v. UC-Menjivar*