Filed 4/20/21  P. v. Gilmore CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B305762 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA105314) |
| v. | |
| JAMAL LEE GILMORE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Julian C. Recana, Judge.  Affirmed.

Robert F. Somers, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,

Senior Assistant Attorney General, Zee Rodriguez and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

Between November 2002 and February 2015, appellant Jamal Lee Gilmore suffered a series of juvenile adjudications and criminal convictions, as a result of which he was sentenced to a four-year prison term and multiple terms of probation. In July 2015, while still on probation for a prior offense, appellant pled guilty to inflicting corporal injury on the mother of his two children, and to dissuading her from testifying. The latter offense qualified as a strike under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12) and a serious felony under Penal Code section 667, subdivision (a). In October 2016, while still on probation for his July 2015 offenses, appellant caused a disturbance in a court's lockup sally port, prompting peace and custodial officers to move appellant into a cell. Appellant violently resisted the officers, bruising a custodial officer's legs and causing a peace officer to suffer a torn meniscus in his right knee. The jury convicted appellant of felony battery on the peace officer and misdemeanor battery on the custodial officer, and found that appellant inflicted great bodily injury on the peace officer.

The trial court selected the three-year upper term for appellant's felony battery conviction, relying on a

2

psychological evaluation indicating appellant harbored anger against and a desire to fight law enforcement (from which the court inferred that appellant posed a risk of danger to public safety), the fact that appellant was on probation when he committed the instant offenses, and appellant's poor performance on probation. The court sentenced appellant to an aggregate prison term of 14 years, including a five-year enhancement for appellant's prior serious felony under Penal Code section 667, subdivision (a). In an unpublished opinion, we affirmed the judgment, concluding, inter alia, that the court did not err in selecting the upper term for the reasons it stated. (*People v. Gilmore* (Dec. 11, 2018, No. B284043).) However, we remanded to the trial court with directions to decide whether to exercise its newly granted discretion to strike the prior-serious-felony enhancement under Senate Bill No. 1393 (Stats. 2018, ch. 1013, §§ 1-2; (S.B. 1393)). On remand, the court declined to strike the enhancement, relying on the same reasons it had articulated when selecting the upper term.

On appeal, appellant contends the trial court abused its discretion in declining to strike the prior-serious-felony enhancement, arguing the court's decision was so arbitrary or irrational that no reasonable person could agree with it. We affirm.

3

## FACTUAL BACKGROUND

### A. *Appellant's Prior Offenses*

Between November 2002 and February 2015, appellant suffered a series of juvenile adjudications and criminal convictions, including a 2008 conviction for transporting controlled substances for sale.[1] (Health & Saf. Code, § 11352, subd. (a).) Appellant was sentenced to a four-year prison term on his transportation-for-sale conviction, and to probation on his other convictions.

In July 2015, while still on probation for his February 2015 offense, appellant pled guilty to inflicting corporal injury on the mother of his two children (Pen. Code, § 273.5, subd. (a)), and to dissuading her from testifying (*id.*, § 136.1, subd. (b)(2)). The latter offense qualified as a strike and a serious felony. (*Id.*, §§ 667, subd. (a)(4), 1170.12, subd. (b)(1), 1192.7, subd. (c)(37).) Pursuant to a plea deal, appellant was sentenced to three years of probation.

---

[1]     In addition to his 2008 transportation-for-sale conviction, appellant also suffered: (1) a 2002 juvenile adjudication for attempted robbery (Pen. Code, §§ 211, 664); (2) a 2005 juvenile adjudication for threats against school employees (*id.*, § 71); (3) a 2006 juvenile adjudication for a probation violation (Welf. & Inst. Code, § 778); (4) a June 2012 misdemeanor conviction for trespass (Pen. Code, § 602); (5) August 2012 misdemeanor convictions for battery (*id.*, § 242) and vandalism (*id.*, § 594); and (6) a February 2015 misdemeanor conviction for vandalism (*ibid.*).

## B. *Appellant's Instant Offenses*

On October 19, 2016, following an appearance at the Long Beach courthouse, appellant awaited a bus in the lockup sally port.[2] Upon learning that the bus was full, appellant became upset and demanded a place on the bus. Los Angeles County Custody Assistant Xochitl Walden-Ramirez and other lockup personnel told him to return to the lockup, but he refused to do so.

Appellant -- who was still on probation for his July 2015 offenses -- lunged at the deputy sheriff assigned to drive the bus and said, "I will show you, gangster." Los Angeles County Deputy Sheriff Darren Williams, the lockup supervisor, grabbed appellant and directed other deputy sheriffs to return appellant to the lockup. As the deputy sheriffs dragged appellant into the lockup, he thrashed his head, kicked his feet, and tried to turn around. Appellant said to custody assistant Walden-Ramirez, "Bitch, I'm going to kill you. Fucking bitch. I'm going to get you."

Inside the lockup, Williams instructed two other deputy sheriffs to place appellant in a cell. At the door of the cell, appellant hooked or locked his legs in an effort to avoid entering it. The deputy sheriffs and Walden-Ramirez

---

[2] The facts regarding appellant's instant offenses are taken from our unpublished opinion affirming the judgment and remanding for consideration of the court's discretion under S.B. 1393.

nonetheless moved appellant into the cell, where he continued to resist them.

In order to allow the other deputy sheriffs and Walden-Ramirez to back out of the cell, Deputy Sheriff Williams put his legs against appellant, who had braced his feet on a bench attached to the cell's wall. Appellant then pushed off from the bench, causing Williams's knees to hyperextend. As a result, Williams suffered a torn meniscus in his right knee. Also injured was Walden-Ramirez, who was shoved into the cell's benches and suffered bruises on her calves.

Williams tried to close the cell door, but the door moved slowly, enabling appellant to move himself into the doorway. Appellant spit at Walden-Ramirez, but hit a deputy sheriff. A lockup sergeant then appeared and ordered the deputy sheriff to pepper spray appellant, which rendered him "semicompliant."

At appellant's trial on battery charges, the jury viewed video recordings of the pertinent events and heard testimony from Williams, Walden-Ramirez, and the deputy sheriff on whom appellant spat. The jury convicted appellant of felony battery on Deputy Sheriff Williams (Pen. Code, § 243, subd. (c)(2)), and found that appellant inflicted great bodily injury on him (*id.*, § 12022.7, subd. (a)). The jury also convicted appellant of misdemeanor battery on Custody Assistant Walden-Ramirez. (*Id.*, § 243, subd. (b).)

## C. *The Original Sentencing Hearing*

In preparation for sentencing, appellant produced a report of his evaluation by psychologist Michelle Margules, Psy.D. Dr. Margules described appellant's reported history of physical and sexual abuse in his childhood and treatment for "Bipolar/Schizophrenia," and noted that his mother reportedly had been murdered in his youth. She reported that appellant told her "he struggles now with anger and wanting to fight with police," and that he "acknowledged general anger toward law enforcement." Dr. Margules diagnosed appellant with bipolar disorder and a childhood history of physical and sexual abuse. She concluded, "Regardless of Mr. Gilmore's legal outcome, he appears to require mental health treatment (including a medication evaluation by a psychiatrist) to address anger management, mood disturbance and a history of trauma."

At the sentencing hearing, the prosecutor urged the court to impose the three-year upper term for appellant's felony battery conviction, arguing that appellant had been "a danger to society for many many years." He argued that appellant's troubled history had factored into the leniency appellant already had received in being sentenced to probation on his domestic violence and witness intimidation convictions, and that further leniency should yield to the protection of the public.

Defense counsel urged the court to impose the low term. Counsel observed there was "no reason to even characterize" appellant's instant offenses because the court

had "seen what his actions were" when it viewed the video recordings played at trial. Counsel nevertheless argued that appellant had committed the offenses while struggling with the deputy sheriffs, not while "criming," and that but for the injury to Deputy Sheriff Williams, "a lay person would probably say there is no crime there." Relying on Dr. Margules's report, he argued appellant "needs help or he needs to be treated or moved from society." Finally, defense counsel argued that appellant was facing a disproportionate sentence as a result of his plea deal in the domestic violence and witness intimidation case, in which the prosecution had "offer[ed] him the front door to the courtroom if he . . . t[ook] a five-year prior and a strike."

Before pronouncing sentence, the court heard from appellant, who expressed remorse for the incident involving Deputy Sheriff Williams, stating, "I don't know what happened right there." Appellant maintained that he had no criminal record of violence aside from his domestic violence conviction, which he characterized as "little stuff," commenting, "Nothing happened. I just pushed her to the ground because she was slapping me." He noted that he had taken classes on domestic violence and obtained mental health treatment.

The court observed it had little discretion over the aggregate term other than in the selection of the base term. It selected the upper term, explaining, "I have taken into consideration, seeing Mr. Gilmore on multiple occasions, some days Mr. Gilmore has been very pleasant, some days

8

not so much.  Maybe that is attributed to his psychological history from the evaluation by Ms. Margules by his bipolar and manic depressive state. . . .  [¶] I will also note . . . there were two portions in [Dr. Margules's] report where it stated, one, that he struggles now with anger and wants to fight the police; and two, that, quote, 'he has a general anger towards law enforcement,' unquote.  [¶] I am fully sympathetic as to his history.  There [are] allegations of . . . the death of his mother early on, physical abuse, [and] sexual abuse as to Mr. Gilmore that may have contributed to his personality.  The court can look at that as a source of mitigation.  But based on even [appellant's proffered] psychologist evaluation, [he] poses a danger to society.  It's -- if he is a danger to law enforcement, then how is he going to be towards the regular citizens of the community? . . .  [¶] The court also takes into consideration that . . . he was on probation when the crime was committed[;] [that] [h]is probation was unsatisfactory during that time; [and] that he served a prior prison term.  All of those are circumstances that make the high term the appropriate term."

The court sentenced appellant to an aggregate term of 14 years, comprising the three-year upper term for the felony battery conviction (doubled to six years under the Three Strikes law), a three-year enhancement for the infliction of great bodily injury, and a five-year enhancement for appellant's prior serious felony under Penal Code section 667, subdivision (a).

**D.** *Our Prior Opinion*

Appellant appealed the judgment, contending, inter alia, that the trial court had erred in selecting the upper term. He argued the court had failed to give due weight to his mental illness and difficult childhood, the harshness of the mandatory aspects of his sentence, and the consequences of a lengthy sentence for the possibility of his rehabilitation. We rejected this contention, observing that the court had "attended carefully to appellant's showing of mitigating circumstances," had found several aggravating factors, and "could reasonably have concluded that public safety was best served if appellant addressed his mental health issues while incarcerated." We affirmed the judgment, but remanded to the trial court with directions to decide whether to exercise its newly granted discretion under S.B. 1393 to strike the prior-serious-felony enhancement. The remittitur issued on February 14, 2019.

**E.** *The Resentencing Hearing*

On February 20, 2020, the court held a resentencing hearing to decide whether to strike the prior-serious-felony enhancement. At the outset, the court noted that it had reread Dr. Margules's report and the transcript of the original sentencing hearing, and that it had additionally read several documents produced by appellant concerning his activities while incarcerated (including a vocational welding program, mental health treatment, and a "12 steps" program).

10

The court heard from appellant, who described his activities while incarcerated and denied that he harbored any anger against law enforcement, claiming he had never expressed such anger to Dr. Margules. Appellant also expressed remorse for the instant offenses.

Defense counsel informed the court that appellant had received no discipline while incarcerated. He argued the video recordings of the instant offenses (which are not in the record) showed appellant's conduct had been merely reckless rather than intended to cause injury. He observed that the prior-serious-felony enhancement arose from a plea deal appellant had accepted in order to be released on probation, which he characterized as a "fool's deal," despite acknowledging the same deal likely would have been struck had he represented appellant in the prior case.

The prosecutor acknowledged that appellant had done "a good job in prison," but argued that appellant already had been granted leniency in being sentenced to probation on his domestic violence and witness intimidation convictions, and that the court should not grant him further leniency by striking the prior-serious-felony enhancement.

The court noted that it remembered the video recordings of the instant offenses. It referred counsel to its stated rationale, during the original sentencing hearing, for selecting the upper term for appellant's felony battery conviction, which it summarized as follows: "I stated I was fully sympathetic to Mr. Gilmore's mental health history, his prior history of losing his mother, physical abuse, [and]

sexual abuse. However, I also did consider the evaluation by Dr. Margules; that he was on probation; [and] that he was unsatisfactory during probation. For those reasons, I chose the high term." Relying on "those reasons" and "that same rationale," the court declined to strike the prior-serious-felony enhancement. The court added, "I went again and read the report by Dr. Margules in light of what Mr. Gilmore stated. It looks like -- I mean talking about what making a positive -- being in a bad situation and being in jail or state prison [*sic*], he is [making every] effort that he can to advance himself, the 12 steps. He is taking classes and treatment. All the more reason, and to quote from the last page [of Dr. Margules's report], quote, 'Regardless of Mr. Gilmore's legal outcome, he appears to require mental health treatment, including a medication evaluation by a psychiatrist to address anger management, mood disturbance and the history of trauma,' unquote." The court concluded that "for those reasons," the court would not exercise its discretion to strike the enhancement, and appellant's 14-year aggregate term would stand.

Appellant timely appealed.

## DISCUSSION

Appellant contends the trial court abused its discretion in declining to strike the prior-serious-felony enhancement.[3]

---

[3] The People misconstrue appellant's contention as separate claims that his sentence is cruel or unusual, and that the trial *(Fn. is continued on the next page.)*

12

As appellant acknowledges, "'a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.'" (*People v. Sperling* (2017) 12 Cal.App.5th 1094, 1102, quoting *People v. Carmony* (2004) 33 Cal.4th 367, 377.)

The trial court acted within its discretion in declining to strike the prior-serious-felony enhancement. The court relied on the reasons it had articulated at appellant's original sentencing hearing for imposing the upper term, including its finding that appellant posed a risk of danger to public safety. We previously found no error in the court's reliance on those reasons in selecting the upper term. We now find no error in the court's reliance on the same reasons in declining to shorten appellant's sentence by five years. The court's finding that appellant posed a risk of danger to

---

court failed to adequately state reasons for declining to strike the enhancement. The People then argue these purported claims are both forfeited and without merit. In reply, appellant observes that the People misconstrued his contention, and argues he did not forfeit it.

We find no forfeiture. We directed the trial court to consider whether to strike the enhancement, and appellant urged the court to strike it, arguing largely the same grounds he advances on appeal. Thus, the court had an opportunity to avoid the asserted error in the first instance, satisfying the principal purpose of the forfeiture doctrine. (See, e.g., *People v. Scott* (1994) 9 Cal.4th 331, 353 ["As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them"].)

public safety was supported by appellant's prior conviction for a domestic violence offense, his failure to conform to the law despite serving a prior prison term and repeatedly being placed on probation, and his infliction of great bodily injury during the instant offense of battery on a peace officer. We conclude the court's decision to leave the prior-serious-felony enhancement in place was not so arbitrary or irrational that no reasonable person could agree with it. (See *People v. Shaw* (2020) 56 Cal.App.5th 582, 558 [trial court acted within its discretion in declining to strike prior-serious-felony enhancement under S.B. 1393, where court relied on frequency of defendant's prior convictions and "stood by the reasons [it] had articulated at the original sentencing hearing," including the serious nature of defendant's most recent offense].)

Appellant insists his instant and past offenses were "relatively minor," and points to his asserted rehabilitative efforts since the original sentencing hearing. But the trial court considered these matters. Moreover, we previously observed that the court "could reasonably have concluded that public safety was best served if appellant addressed his mental health issues while incarcerated." This conclusion has not become arbitrary or irrational merely because appellant has received some treatment since his original sentencing hearing. Finally, appellant understates the seriousness of his criminal history, particularly with respect

14

to his convictions for abusing the mother of his children and dissuading her from testifying.[4]

In sum, the trial court's decision not to shorten appellant's sentence by five years was not so irrational or arbitrary that no reasonable person could agree with it. Thus, the court acted within its discretion in declining to strike the prior-serious-felony enhancement.

---

[4] While appellant argues his sentence of probation on his domestic violence and witness intimidation convictions demonstrates that the People and the court did not deem them serious, his argument overlooks the fact that he was sentenced to probation pursuant to a plea deal. As appellant's counsel acknowledged at both sentencing hearings, that deal carried consequences for any subsequent conviction, including imposition of the prior-serious-felony enhancement (which the court then lacked discretion to strike). On the record before us, a reasonable person could agree with the trial court's decision to hold appellant to the expected consequences of his bargain. (Cf. *People v. Arnold* (2004) 33 Cal.4th 294, 308 [where defendant enters plea deal pursuant to which he receives probation and waives custody credits, application of credits to defendant's prison term upon revocation of probation would be "unjust enrichment, as the defendant would be getting the benefit of the bargain reached at his original sentencing and later be permitted to revoke the consideration he gave up to obtain the benefit of that bargain"].)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

CURREY, J.

16