Filed 6/5/25  P. v. Armillotto CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD ARMILLOTTO,<br><br>    Defendant and Appellant. | H051788<br>(Santa Cruz County<br>Super. Ct. Nos. 18CR01815,<br>18CR02323) |

In case No. 18CR01815, defendant Richard Armillotto pleaded no contest to first degree burglary and guilty on four misdemeanor counts.  He admitted he was released from custody on bail or his own recognizance at the time he committed the burglary.  The trial court imposed an aggregate sentence of six years in state prison, including the upper term of six years on count 1.

Armillotto raises two claims on appeal.  First, he contends the trial court at sentencing failed to award custody credits to which he is statutorily entitled because the court erroneously found he had waived them knowingly and intelligently.  Second, he contends the trial court violated section 1170, subdivision (b) by imposing the upper term on count 1.  He argues he never stipulated to facts underlying the aggravating circumstances used to justify imposition of the upper term, and that such facts were never found true beyond a reasonable doubt by a jury or the court at a trial.

For the reasons below, we conclude these claims are meritorious. In case No. 18CR01815, we reverse the judgment, vacate the sentence, and remand the matter for resentencing.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

In April 2018, the prosecution charged Armillotto in case No. 18CR01815 with five counts: count 1—first degree burglary (Pen. Code, § 459)[2]; count 2—petty theft (§ 484, subd. (a)); count 3—possession of burglary tools (§ 466); count 4—possession of a controlled substance (Health & Saf. Code, § 11350); and count 5—possession of a device used for unlawfully injecting a controlled substance (Health & Saf. Code, § 11364, subd. (a).) As to count 1, the prosecution further alleged Armillotto had served two prior prison terms (§ 667.5, former subd. (b)), and that he was released from custody on bail or his own recognizance at the time he committed the offense (§ 12022.1).

In May 2018, the prosecution charged Armillotto in case No. 18CR02323 with one count of first degree burglary (§ 459). The prosecution further alleged Armillotto had served two prior prison terms (§ 667.5, former subd. (b)), and that he was released from custody on bail or his own recognizance at the time he committed the offense (§ 12022.1).

### 1. June 2020: Entry of Pleas in Both Cases and Grant of Probation in Case No. 18CR02323

At a single hearing on June 9, 2020, Armillotto entered pleas in both cases. In admonishing Armillotto on the conditions of his pleas, the court told him, "You would be credited for the time you've spent in custody up to this point. That would range per case anywhere from 582 days up to 799 days of actual time." Then, in case No. 18CR01815, Armillotto pleaded no contest on count 1, and guilty on counts 2 through 5. In case

---

[1] Armillotto does not raise any claims in case No. 18CR02323.

[2] Subsequent undesignated statutory references are to the Penal Code.

No. 18CR02323, Armillotto pleaded no contest on count 1.  In both cases, Armillotto admitted he was released from custody on bail or his own recognizance, and the trial court granted the prosecution's motion to strike the prior prison term enhancements as no longer valid.

At the same hearing, in case No. 18CR02323, the trial court suspended imposition of sentence and granted a three-year term of probation with 1,597 days in county jail. Armillotto was credited with 799 days of actual custody and 798 days of conduct credit, so the court deemed the 1,597 days served.  In case No. 18CR01815, the court continued sentencing.

### 2. *2021: Probation Violation and Sentencing Hearings in Case No. 18CR02323 and Three Other Cases*

In March 2021, the probation department filed a report alleging Armillotto had violated the terms of his probation in case No. 18CR02323 and three other cases.  The report alleged Armillotto had been arrested for tampering with a vehicle in December 2020, and in March 2021, he was charged with driving under the influence.  The report stated that Armillotto was under four grants of probation at the time of the report:  case No. 18CR02323, case No. 18CR01852, case No. 18CR02337, and case No. 18CR06787. Armillotto admitted violating the terms of his probation.

On May 20, at a hearing on all five cases, the parties presented argument as to sentencing recommendations, and the court suggested possible ways to structure the sentences.  The court indicated its willingness to keep Armillotto out of state prison by imposing a net additional term of three years in county jail.  The court stated, "For example, if you went on [case No. 18CR02337], an aggravated term on Count 1, three years 1170(h), Count 2, midterm, two years concurrent, Count 3 two years midterm concurrent, the 667.5(b) would be stricken for a total of three years 1170(h) which is served at 50 percent.  [¶]  But I was looking, we start from today.  All credits up to today would be waived."  The prosecution noted that case No. 18CR01815 was "still pending

3

sentencing," and that case No. 18CR02323 was "the other first degree burglary." The prosecution suggested, "So I think we could do, on all other cases, do three years concurrent and have those just be done with at the end of whatever the custodial sanction." The prosecution further suggested setting a later date for sentencing in case No. 18CR01815 and case No. 18CR02323, adding, "[T]hat way Probation continues from that point, and the Court has the probation from the two first-degree burglary cases, he has gotten rid of all the other exposure on the other cases, and basically we start fresh with those two burglaries." Defense counsel did not oppose the prosecution's suggestion but he disputed the necessity of so much time in custody in the interim. The court stated, "We are going to tailor this in a way that this gentleman is going to serve a three-year sentence 1170(h). The issue then becomes how we are going to handle this." The court invited both counsel to meet in chambers to "go through these files and decide exactly how we are going to go file by file, to get a majority of the cases put behind us." The court continued the cases to the next day to permit further discussion.

The next day, on May 21, 2021, the trial court held another hearing to discuss sentencing options. Armillotto was not present. The court stated, "Counsel and I have discussed options in which to get to the net of a three year sentence which Mr. Armillotto was advised of yesterday. . . . [¶] . . . His waiver of credits is something that is absolutely required in order to avoid state prison. This is a benefit provided by the court for Mr. Armillotto in waiving his credits in order to serve a local sentence. I am presuming that he understands that and that we will not have any issues on May 25th. I will be able to adjust his credits to ensure that the net that the court represented to Mr. Armillotto will remain the same and I don't expect there will be any objection from anybody in that regard."

### 3. *Waiver of Custody Credits and Sentencing in Three Other Cases*

On May 25, 2021, the trial court held another sentencing hearing on all five cases, and Armillotto was present. The court stated, "Court is going to proceed with its

4

indicated sentence.  Other than, I will add an additional 90 days actual and 90 days good time-work time credit to the time that we will discuss.  In order to make certain that everything balances out in an appropriate way.  [¶]  My understanding is regarding the issue of time, if this gentleman had 183 days of credit provided before the 90 days, in order to make certain that his next sentence was 3 years, rather than 4 years I would add 183 to 90 to get 273; correct?  . . .  [¶] . . . And that would be 273 actual and 273 good time-work time in relationship to a 4 year sentence."  The prosecutor responded in the affirmative to both statements.

The court then engaged Armillotto in the following colloquy:  "[T]he only way that we're going to be able to ensure that you have a local prison sentence, rather than a state prison sentence is by you waiving your credits.  In light of the fact that I made a representation to you that the total sentence was going to be 3 years."  Armillotto responded, "Okay."  The court continued, "And I am intending to provide 183 days of actual credit because we're going to sentence you to 4 years, 183 plus 183 is 366.  [¶] And that's another year taken off the 4 years to equal 3 years.  Then you are going to be deserving of the 3 months of credit that you've had since you turned yourself in.  [¶]  But I need you to waive the balance of your credits in order to move forward with the resolution that we've discussed.  [¶]  Are you willing to waive the balance of your credits at this time?"  Armillotto responded, "I do," and the court found he had entered "a knowing, intelligent, voluntary waiver of that right."

The court then imposed sentence in the three other cases in which Armillotto was on probation at the time:  case No. 18CR06787, case No. 18CR02337, and case No. 18CR01852.  The aggregate sentence in all three cases totaled four years.

As to case No. 18CR01815, the court continued sentencing until December 2022.  In case No. 18CR02323, the court continued probation in revoked status.

In January 2022, in case No. 18CR02323 the trial court revoked and reinstated probation under the same terms and conditions. In case No. 18CR01815, the court suspended imposition of sentence and granted a 3-year term of probation.

### 4. 2023: Further Probation Violations and Sentencing in Case No. 18CR01815

In January 2023, the probation department filed a probation hold in both case No. 18CR02323 and case No. 18CR01815, citing a "fresh arrest" for false personation (§ 529), possession of burglary tools (§ 466), theft (§ 486), possession of a controlled substance (Health & Saf. Code, § 11350), and possession of paraphernalia (Health & Saf. Code, § 11364).

Armillotto denied the alleged probation violation in February 2023. In August 2023, at the conclusion of a contested probation violation hearing, the trial court found Armillotto in violation of the terms of his probation.

On November 30, 2023, the trial court terminated probation as unsuccessful in case No. 18CR02323, and the court imposed sentence in case No 18CR01815. Before pronouncing sentence, the court asked defense counsel for her calculation of custody credits, and counsel responded that, as of the prior court date, Armillotto had 1,245 days of credit including actual days and goodtime/worktime days. The court rejected counsel's calculation and stated that, according to the court's notes, Armillotto had waived his credits. Counsel explained that she had reviewed the transcripts of the prior hearings and she found no waiver by Armillotto for his custody credits in case No. 18CR01815, which included 799 days. The prosecution agreed with the court. The court calculated 304 days of actual credit and 47 days of goodtime/worktime credit for 351 days of total credit.

In case No. 18CR01815, the trial court imposed an aggregate sentence of six years in state prison. On count 1 (first degree burglary), the court imposed the upper six-year term (§ 461, subd. (a)), which the court stated was "appropriate under all circumstances, in light of this case -- in these cases that Mr. Armillotto and I have been working on for

6

many years." The court imposed concurrent 30-day terms on each of the misdemeanor counts 2 through 5, and the court imposed and stayed a two-year term for the out-on-bail enhancement under section 12022.1.

Defense counsel argued that imposing the upper term of six years on count 1 would require aggravating circumstances to be found true beyond a reasonable doubt or stipulated by Armillotto under section 1170. Counsel argued no such aggravating circumstances existed, and the court responded, "They exist in spades, and Mr. Armillotto knows this. This matter has been going on for a long time. We have had a series of meetings, discussions, discussions on the record, opportunities for Mr. Armillotto to take advantage of a chance to be out in public, a chance to succeed in the public, over and over again. [¶] I don't think I've ever had a defendant that I've spent more time with than Mr. Armillotto." Counsel asked the court to state the circumstances on the record, and the court stated, "From the Court's perspective, the circumstances of this matter do confirm, do legitimize that aggravated terms be provided." The court reiterated that it had spent a great deal of time with Armillotto "trying to see what we could do to make sure that he succeeds to the best of his ability," adding, "Unfortunately, we are at the end of the rope at this point and I'll proceed with the sentence that he has understood was going to be the sentence at least for months, if not indeed years."

### B. Facts of the Offenses[3]

The information in case No. 18CR01815 alleged the offenses in counts 1 and 2 took place on March 18, 2018, and the offenses in counts 3 through 5 took place on March 14, 2018. The facts are not set forth in the record.

According to a March 2021 probation report, in case No. 18CR02323, a video camera recorded Armillotto entering a storage unit and stealing items on March 30, 2018.

---

[3] The facts of the offenses are taken from the March 2021 probation report.

As to Armillotto's conduct over the duration of the proceedings generally, probation reports describe him as repeatedly committing property crimes concomitant with his addiction to controlled substances.

## II. DISCUSSION

### A. Johnson *Waiver and Calculation of Custody Credits*

Armillotto challenges the trial court's calculation and award of custody credits at a sentencing hearing on November 30, 2023. He argues the evidence is insufficient to show that he knowingly and intelligently waived his statutory right to custody credits in case No. 18CR01815. The Attorney General contends the record shows Armillotto knowingly and intelligently waived custody credits in exchange for a local jail sentence.

#### 1. *Legal Principles*

"Penal Code section 2900.5 provides that the total number of days a defendant spends in custody, either before sentencing or as a condition of probation, 'shall be credited' against the defendant's 'term of imprisonment.' " (*People v. Johnson* (2002) 28 Cal.4th 1050, 1052 (*Johnson*).) "Under section 2900.5, a defendant sentenced either to county jail or to state prison is entitled to credit against the term of imprisonment for days spent in custody before sentencing as well as those served after sentencing as a condition of probation." (*Id.* at p. 1053.) " '[T]he court imposing the sentence' has 'the duty . . . to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section' and list them on the abstract of judgment or probation order indicating a term of imprisonment. (§ 2900.5, subd. (d); see § 1213, subd. (a).)" (*People v. Arevalo* (2018) 20 Cal.App.5th 821, 829 (*Arevalo*).)

We independently review whether a trial court has correctly applied the governing statutes in awarding custody credits. (*Arevalo*, *supra*, 20 Cal.App.5th at p. 827.) "A sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered." (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.)

8

"[A] defendant may expressly waive entitlement to section 2900.5 credits against an ultimate jail or prison sentence for past and future days in custody." (*Johnson*, *supra*, 28 Cal.4th at pp. 1054-1055.) "A *Johnson*[4] waiver is a waiver of a statutory right to credit for time served against a subsequent county jail or state prison sentence pursuant to section 2900.5." (*People v. Arnold* (2004) 33 Cal.4th 294, 307.) "By allowing a defendant to waive custody credits for previous jail time, *Johnson* permits 'a sentencing court to reinstate probation conditioned on service of an additional period of up to one year in county jail for the new probation violation' and thereby ensure that the defendant actually spends additional time in jail." (*Arevalo, supra*, 20 Cal.App.5th at p. 829.)

"As with the waiver of any significant right by a criminal defendant, a defendant's waiver of entitlement to section 2900.5 custody credits must, of course, be knowing and intelligent." (*Johnson*, *supra*, 28 Cal.4th at p. 1055.) " 'To determine whether a waiver is knowing and intelligent, the inquiry should begin and end with deciding whether the defendant understood [they were] giving up custody credits to which [they were] otherwise entitled.' [Citation.]" (*People v. Jeffrey* (2004) 33 Cal.4th 312, 320.) "Whether a *Johnson* waiver is knowing and intelligent is determined under the totality of the circumstances and is a question of law we review de novo." (*Arevalo*, *supra*, 20 Cal.App.5th at p. 831.)

### 2. *Armillotto Did Not Validly Waive Custody Credits in Case No. 18CR01815*

Armillotto does not dispute that he entered a valid *Johnson* waiver with respect to his custody credits in three other cases: case No. 18CR06787, case No. 18CR02337, and case No. 18CR01852. He argues only that he did not waive his custody credits in case No. 18CR01815. The Attorney General addresses the validity of the waiver generally, but he does not address that specific point.

---

[4] *People v. Johnson* (1978) 82 Cal.App.3d 183.

The record supports Armillotto's claim. Armillotto entered the *Johnson* waiver at the May 25, 2021 hearing. At the time, he was appearing on five different cases, and the trial court did not take a separate waiver for each case, nor did it clarify that the waiver would apply to every case, including cases that would not be sentenced that day.

At the May 21, 2021 hearing, the court stated its intent to impose a local sentence, but the court emphasized that Armillotto would have to waive custody credits for the court to do so, explaining, "His waiver of credits is something that is *absolutely required* in order to avoid state prison. This is a benefit provided by the court for Mr. Armillotto in waiving his credits in order to do so." (Italics added.)

At the May 25, 2021 hearing, the court reiterated this in a colloquy with Armillotto: "[T]he *only way* that we're going to be able to ensure that you have a local prison sentence, rather than a state prison sentence is by you waiving your credits." (Italics added.) The court stated that to arrive at the indicated sentence, the court intended to award 183 actual days of credit for 366 days of total credit, taking one year of time off the aggregate four-year sentence. The court then stated, "But I need you to waive *the balance of your credits* in order to move forward with the resolution that we've discussed. [¶] Are you willing to waive *the balance of your credits* at this time?" (Italics added.) Armillotto responded in the affirmative, and the court found the waiver knowing, voluntary, and intelligent. The court then imposed the aggregate four-year sentence in case No. 18CR06787, case No. 18CR02337, and case No. 18CR01852.

The trial court did not expressly refer to any specific case numbers when it took Armillotto's *Johnson* waiver, but viewing the court's statements in context, Armillotto's waiver did not constitute a knowing and intelligent waiver of custody credits in case No. 18CR01815. The court repeatedly stated the waiver was necessary in order to impose the indicated sentence, which the court imposed in Armillotto's three other cases. In case No. 18CR01815, no *Johnson* waiver was necessary because no sentence was imposed in that case. A defendant hearing the court's explanation for why the *Johnson*

10

waiver was necessary could reasonably understand that the waiver included only those custody credits necessary to impose the indicated sentence. After pronouncing sentence, the court stated the aggregate custody credits, reflecting the waiver of custody credits, as follows: "Total aggregate credit of 546 days *on that 4 year sentence*." The court neither calculated nor awarded custody credits in case No. 18CR01815 at the hearing. Instead, the court continued sentencing in that case.

Based on the totality of the circumstances set forth above, we conclude Armillotto did not enter a knowing and intelligent waiver of custody credits in case No. 18CR01815. Because the trial court at sentencing in that case calculated the custody credits based on an erroneous waiver finding, we will instruct the court to recalculate the total days of credit on remand.

## B. *Imposition of the Upper Term on Count 1*

In case No. 18CR01815, the trial court imposed the upper term of six years for first degree burglary on count 1. Armillotto contends this was an abuse of discretion because the court failed to state its reasons for imposing the upper term, and no facts underlying any aggravating factors were stipulated by Armillotto or found true beyond a reasonable doubt by a jury or the court at a trial. The Attorney General contends no remand is warranted because Armillotto has not shown he was prejudiced.

### 1. *Legal Principles*

Effective January 1, 2022, Senate Bill No. 567 amended section 1170, subdivision (b) to make the middle term the presumptive sentence. (Stats. 2021, ch. 731, § 1.) As amended by Senate Bill No. 567, section 1170, subdivision (b)(2) provides in part, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." Section 1170, subdivision (b)(2)

11

provides in part, "The court shall set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."

"When the trial court actually relies on improperly proven aggravating facts to 'justify' an upper term sentence, a Sixth Amendment violation occurs and [*Chapman v. California* (1967) 386 U.S. 18] must be satisfied. That is to say the reviewing court must be able to conclude beyond a reasonable doubt that the jury would have found the unproven aggravating facts to be true had it been properly instructed." (*People v. Lynch* (2024) 16 Cal.5th 730, 761 (*Lynch*).)

### 2. *The Trial Court Did Not Specify Its Reasons for Imposing the Upper Term*

When defense counsel argued no aggravating circumstances had been shown and requested that the trial court set forth its reasons for imposing the upper term, the court responded, "They exist in spades." The court stated that the matter had been "going on a long time" with many meetings and discussions, and many opportunities for Armillotto to succeed, but that, "Unfortunately, we are at the end of the rope at this point and I'll proceed with the sentence that he has understood was going to be the sentence at least for months, if not indeed years."

We recognize the trial court's frustration with Armillotto as a probationer to whom the court had extended several opportunities for rehabilitation and treatment, and we express no opinion on whether aggravating circumstances could have been properly pleaded and proven. But the severity of sentence upon revocation of probation is intended to reflect not the court's disappointed hopes, but the nature and circumstances of the offense and the history and characteristics of the offender. And under the law already then in existence, Armillotto had what our high Court has held to be a federal constitutional right to notice and a trial on any aggravating factors the trial court would rely on. He had neither.

Armillotto contends the trial court's statement of reasons and imposition of the upper term failed to comply with the requirements set forth in section 1170, subdivision (b). The Attorney General contends the trial court properly stated its reasons, but that even if the court's stated reasons "were somehow lacking," Armillotto has not shown he was prejudiced. The Attorney General argues the trial court made it clear that it would impose the same sentence on remand, making a remand futile.

The Attorney General points to nothing in the record showing Armillotto stipulated to facts underlying the circumstances in aggravation or that any such facts were found true beyond a reasonable doubt by the jury or the judge in a trial. The Attorney General argues the court's statements show it essentially relied on Armillotto's history of recidivism, and he contends the court could also justify the upper term under the "catch-all" provision of rule 4.421(c) of the California Rules of Court (the court may consider "[a]ny other factors . . . which reasonably relate to the defendant or the circumstances under which the crime was committed.").

The record does not show that Armillotto stipulated to the facts underlying the aggravated circumstances, and neither a jury nor the court found such facts true beyond a reasonable doubt at a trial. The trial court thereby failed to justify imposition of the upper term on count 1 under section 1170, subdivision (h).

The Attorney General argues the record shows beyond a reasonable doubt that the trial court would impose the same sentence on remand. But that is not the standard for prejudice set forth in *Lynch*, *supra*, 16 Cal.5th at page 761, and *Lynch* addressed only what prejudice was necessary when retroactively applying Senate Bill No. 567 on direct review of sentences imposed before that new legislation became operative. Here, the trial court improperly acted as factfinder despite the plain terms of section 1170, subdivision (h) as already amended. Because Armillotto has not disputed application of the *Chapman* standard, however, we will assume without deciding that the harmless error doctrine applies to the erroneous denial of jury trial on aggravating factors after the right

was codified.  To find the error harmless, we must be able to conclude beyond a reasonable doubt that the jury would have found the unproven aggravating facts true beyond a reasonable doubt.  (*Lynch*, *supra*, 16 Cal.5th at p. 761.)  That standard applies to *all* the aggravating circumstances the trial court actually relied upon.  (*Id.* at p. 768.)

The Attorney General argues that the trial court could rely on Armillotto's prior convictions without submitting them for jury trial under section 1170, subdivision (b)(3).  Even assuming that the court was relying on the number and escalating severity of the cases it had adjudicated, we note that this arguably exceeds section 1170, subdivision (b)(3)'s limitation to 'the fact of a prior conviction' proven by a certified record (without allowance for a court's personal knowledge of past criminal proceedings).  Moreover, the court gave Armillotto no notice of which convictions it was relying on or what features of those convictions it considered aggravating.  The trial court's failure to identify the basis for its aggravated sentence—beyond the vague references it offered—prevents us from even assessing the error for harmlessness.

In any event, because we must remand for the reasons set forth in section II.A above, remand would not be futile.  Accordingly, we will vacate the sentence and order the trial court to sentence Armillotto in compliance with section 1170 on remand.

## III.    DISPOSITION

The judgment in case No. 18CR01815 is reversed, the sentence is vacated, and the matter is remanded to the trial court for the recalculation of custody credits and resentencing in compliance with Penal Code section 1170, subdivision (b).

_____

Greenwood, P. J.

WE CONCUR:


_
_____

 Grover, J.


_____

 Lie, J.


People v. Armillotto
H051788